IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**KATHLEEN LOU SPEARS,**                    Case No. 3:15 CV 2261

    Plaintiff,                                     Judge Jeffrey J. Helmick

    v.                                                  Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                                    REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff Kathleen Lou Spears ("Plaintiff") filed a complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated November 3, 2015). Following review, the undersigned recommends the Court affirm the Commissioner's decision denying benefits.

### PROCEDURAL BACKGROUND

Plaintiff filed an application for benefits in May 2012, alleging disability as of February 7, 2012. (Tr. 147). The claim was denied initially and on reconsideration. (Tr. 76-80, 83-85). Plaintiff (represented by counsel) and a vocational expert ("VE") testified at an administrative hearing on March 13, 2014. (Tr. 31-58). Following the hearing, an administrative law judge ("ALJ") issued an unfavorable decision finding Plaintiff not disabled. (Tr. 11-27). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of

the Commissioner. (Tr. 1-5); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on November 3, 2015. (Doc.1).

## FACTUAL BACKGROUND

<u>Personal and Vocational Background</u>

Plaintiff was born on June 24, 1951. (Tr. 147). She has a twelfth grade education (Tr. 38) and past work experience as a cashier and fast food manager (Tr. 39, 40, 54-55). At the time of the hearing, she lived in a home with her adult son and two grandchildren. (Tr. 37).

<u>Relevant Medical Evidence</u>

A February 10, 2012, ultrasound of Plaintiff's bladder revealed cholelithiasis. (Tr. 221). Plaintiff was evaluated for right upper quadrant pain in late February 2012. (Tr. 237). She stated she had been off work for two weeks, but at the time of the appointment her pain was "entirely resolved". *Id.* An examination revealed a normal range of motion, no edema in her extremities, and no abnormal muscular movements or weakness. *Id.* Her skin was "normal color, tone, and turgor without ulcers, nodules, or lesions." *Id.*

Plaintiff underwent gall bladder surgery on April 6, 2012. (Tr. 222). A surgical pathology report signed April 9, 2012, revealed Plaintiff had chronic cholecystitis and cholelithiasis of the gallbladder. *Id.* On April 23, 2012, Plaintiff returned to John McDonough, III, M.D. for follow up; she had no major complaints. *Id.* Dr. McDonough cleared Plaintiff to return to work on March 5, 2012, but she indicated she did not want to go back to work. (Tr. 235).

Plaintiff saw Sudesh S. Reddy, M.D., from June 2011 to June 2013. (Tr. 221-44, 255-70). He noted Plaintiff's diagnoses included sciatica, a lumbar strain, and right leg weakness and tingling. (Tr. 230). Dr. Reddy noted she had a decreased range of motion and prescribed medication and physical therapy. *Id.*

X-rays of the right knee taken on November 20, 2012, revealed no acute osseous findings and "[m]ild bicompartment osteoarthritic changes." (Tr. 252). X-rays of the lumbar spine showed no acute findings or major degenerative changes, but did reveal mild lower lumbar facet arthropathy at the L5-S1 level. (Tr. 253).

On November 27, 2012, Plaintiff complained of left arm pain and limited mobility. (Tr. 267). An examination revealed decreased ranged of motion in her left shoulder. *Id.* A treatment note stated an x-ray of the Plaintiff's left shoulder revealed mild degenerative joint disease. (Tr. 270).

At a physical therapy appointment on December 12, 2012, Plaintiff reported sharp pain of 8/10 in her left shoulder, possibly caused by her "assisting with transfer [of] her ailing mother." (Tr. 260). She reported "difficulty with housework, fastening bra, lifting pots of food, etc". *Id.* Tests revealed some decreased range of motion, but it was "difficult to administer tests due to patient's pain and apprehension of pain". (Tr. 262).

The following day, December 13, 2012, at Dr. Reddy's office Plaintiff complained her left arm was still hurting and she was advised to continue physical therapy and would likely need an MRI. (Tr. 266). She was given Toradol. *Id.* Her hands were cracking and dry and she was diagnosed with eczema. *Id.*

A treatment note from Dr. Reddy's office dated December 20, 2012, states Plaintiff's hands were "getting worse" and that she requested a referral to another doctor. (Tr. 258). The diagnosis was severe eczema in her hands. *Id.*

Plaintiff had an appointment for a left shoulder MRI on June 20, 2013, but any results of such test are missing from the record. (Tr. 259).

Opinion Evidence

*State Agency Reviewers*

On August 7, 2012, state agency reviewer Robert Klinger, M.D., determined there was no evidence of a severe physical impairment. (Tr. 62).

On December 3, 2012, a second state agency reviewer Leslie Green, M.D., completed a physical residual functional capacity assessment. (Tr. 72). Dr. Green determined Plaintiff could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk for a total of about 6 hours in an 8-hour workday; sit for a total of about 6 hours in an 8-hour workday; and could push and/or pull without limitation. *Id.*

*Consultative Examiners*

On November 20, 2012, Khozema Rajkotwala, M.D., examined Plaintiff and concluded she could sit, stand, and walk with some difficulty; and could frequently lift and carry 10-15 pounds and occasionally 15-25 pounds. (Tr. 251). Plaintiff was not accompanied to the appointment and did not require an ambulatory aide. (Tr. 249). Dr. Rajkotwala noted Plaintiff complained of back pain and shoulder pain beginning a few months prior, but had not had an x-ray or MRI of either. (Tr. 251). Dr. Rajkotwala noted Plaintiff did have an MRI performed on her right knee and right knee surgery. *Id.* Upon physical exam, Plaintiff had "a normal grasp, manipulation, pinch, and fine coordination"; and her "[c]ervical spine, shoulder, elbow, wrist, hands and fingers ranges of motion were all intact except [left] shoulder." *Id.* She had an intact range of motion in her hip, knee, and ankle as well, but not in her dorsolumbar spine. *Id.* Dr. Rajkotwala's impression was lumbar degenerative joint disease, right leg sciatica, and left shoulder pain. (Tr. 249).

<u>Hearing Testimony</u>

Plaintiff testified she had trouble writing due to "problems with [her] fingers." (Tr. 38, 45-46). She testified she was unable to work since February 2012 after undergoing gallbladder surgery, because she developed sciatica. (Tr. 43). She experienced pain from her lower back down her right leg. *Id.* Standing made the pain worse and she testified she could only stand for about ten to fifteen minutes at a time before needing to sit down. *Id.* Plaintiff estimated she spent two to two and a half hours standing in an eight-hour day. (Tr. 50). She estimated she could sit for an hour in a "comfortable chair" or a half hour otherwise. (Tr. 49). Plaintiff stated neither over the counter medication, nor heat and ice treatment alleviated the pain. (Tr. 43-44).

Plaintiff stated she was unable to return to work due to her medical condition and was therefore fired from her job. (Tr. 44). At the time of the hearing, she did not have medical insurance and applied for Medicaid but was told she "had to be either disability, disabled or be 65." *Id.* She stated she last saw Dr. Reddy in mid-2013 and since that time had been doing "[n]othing" when she experienced sciatica flare-ups or back pain. (Tr. 45).

Plaintiff also testified she had problems with her shoulder and was not able to lift overhead with her left arm. *Id.* She stated a doctor "classified . . . it as a frozen shoulder." *Id.* She was able to reach out in front of herself. *Id.* Plaintiff tried to avoid using her left arm, "[e]xcept for taking a shower and stuff like that". *Id.*

She stated her hands were "cracking and bleeding". (Tr. 46). She tried "all sorts of lotions and stuff and nothing has seemed to help." *Id.* The condition was exacerbated when her hands were in water and greatly impacted her ability to perform fine manipulation and write due to a loss of feeling and pain. (Tr. 46-47). She was still able to cook but had to "do it in spurts". (Tr. 47).

A typical day consisted of waking up, making coffee, and watching the news. *Id.* Then she would "have to walk around a little bit because [she] [couldn't] sit for too long." *Id.* She washed dishes, cleaned, and vacuumed, but would need to sit down and take a break for ten to fifteen minutes. (Tr. 47, 48). She would then get dressed and fix herself lunch. (Tr. 47). Her son helped her "cook and stuff". *Id.* Plaintiff could no longer clean the bathtub and her children would no longer let her clean the dishes because of the condition of her hands. (Tr. 48). She could grocery shop with the assistance of a motorized cart and stated Dr. Reddy prescribed her a handicapped placard. *Id.* She alternated positions frequently throughout the day and would lay down occasionally if she could "get in a comfortable position". (Tr. 49). She was unable to lift a gallon of milk and estimated she could lift two pounds, "maybe". *Id.* She tried to attend social functions once a month, but could no longer dance. *Id.* She was able to drive. (Tr. 52-53).

Plaintiff stated she suffered from depression since 2012, and but could no longer afford to take medication. (Tr. 50).

She lost her medical insurance in 2012, but continued to see Dr. Reddy through June 2013 because her children paid for the visits, but they were no longer able to do so. (Tr. 51). Plaintiff testified she had not looked for any affordable or free clinics in her area because she "[d]idn't know there [were] any." *Id.* The ALJ asked her about a note in the medical record in which her doctor stated she could return to work, but she did not wish to go back to work because she was helping care for her sick mother. *Id.* However, Plaintiff stated she was unable to go back to work due to her "back". *Id.*

Plaintiff cared for her amputee mother by bathing her, helping her to the restroom, and picking her up out of bed and placing her into a wheelchair. (Tr. 52). Her mother weighed

approximately 84 pounds. *Id.* Plaintiff injured her left shoulder in September 2012 when "transferring" her mother. *Id.*

The VE determined a hypothetical individual vocationally situated to Plaintiff who could perform all functions of light work would be capable of performing Plaintiff's past work of cashier and fast food worker either as it was actually performed by Plaintiff or as those occupations are generally performed. (Tr. 55). The VE noted the individual would still be able to perform these jobs with a limitation of occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling. (Tr. 55-56). The VE determined the individual would be able to perform these jobs with a limitation of never climbing ladders, ropes, or scaffolds as well. (Tr. 56). He also indicated a limitation of no reaching with the left extremity over the shoulder would not impact the individual's ability to perform these jobs. *Id.* The VE noted if the individual could only stand or walk for two hours in an eight-hour workday and only fifteen minutes continuously, she would unable to perform Plaintiff's past relevant work and would be limited to sedentary work. *Id.*

ALJ Decision

In a written decision dated June 6, 2014, the ALJ made the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since February 7, 2012, the alleged onset date.

3. The claimant has the following severe impairments: mild bicompartment osteoarthritis changes of the right knee; degenerative disc disease, kyphosis and mild lower lumbar facet arthropathy of the lumbar spine; sciatica, radiculitis of the right lower leg, and mild osteoarthritis of the left shoulder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform all functions of light work as defined in 20 CFR 404.1567(b) except occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and never climb ladders, ropes or scaffolds.

6. The claimant is capable of performing past relevant work as a cashier and a fast food worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 7, 2012, through the date of this decision.

(Tr. 11-27) (internal citations omitted).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### STANDARD FOR DISABILITY

Eligibility for disability benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's RFC and can claimant perform past relevant work?

5.  Can claimant do any other work considering her RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff alleges the ALJ erred in three ways: (1) failing to find Plaintiff's eczema was a severe impairment (and therefore the RFC is not supported by substantial evidence); (2) determining Plaintiff can perform her past relevant work; and (3) conducting an improper credibility assessment. The Court will address each argument in turn.

Step Two - Severe Impairments

Plaintiff first alleges the ALJ erred by not including Plaintiff's eczema among her severe impairments. However, as the Commissioner points out, because the ALJ found Plaintiff suffered from other severe impairments, it was irrelevant whether he considered Plaintiff's eczema severe. 20 C.F.R. § 416.920(c) (relevant inquiry at step two is whether "you do not have *any*" severe impairments (emphasis added)); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576-77 (6th Cir. 2009).

The regulations do not require the ALJ to designate each impairment as "severe" or "non-severe"; rather, the determination at step two is merely a threshold inquiry. 20 C.F.R. § 404.1520(a)(4)(ii). "After an ALJ makes a finding of severity as to even one impairment, the ALJ 'must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" *Nejat*, 359 F. App'x at 576 (quoting SSR 96-8p, 1996 WL 374184, at *5). In other words, if a claimant has at least one severe impairment, the ALJ must continue the disability evaluation and consider all the limitations caused by the claimant's impairments, severe or not. And when an ALJ considers all a claimant's impairments in the remaining steps of the disability determination, the failure to find additional severe impairments does not constitute reversible error. *Nejat*, 359 F. App'x at 577 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

10

Here, the ALJ determined Plaintiff's eczema was "not severe" because there was "a lack of objective medical evidence in the record to demonstrate that the claimant's . . . eczema of the hands . . . cause[s] more than minimal functional limitations." (Tr. 16). However, he did find severe impairments of mild bicompartment osteoarthritis changes of the right knee; degenerative disc disease, kyphosis and mild lower lumbar facet arthropathy of the lumbar spine; sciatica; radiculitis of the right lower leg; and mild osteoarthritis of the left shoulder. (Tr. 16). The ALJ's threshold inquiry at step two was therefore proper. 20 C.F.R. § 404.1520(a)(4)(ii).

<u>RFC Determination</u>

Within her first assignment of error, Plaintiff alleges the ALJ did not properly include limitations caused by her eczema and left shoulder injury in the RFC determination. A claimant's residual functional capacity ("RFC") is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence *Id.* § 416.929. While an ALJ must consider and weigh medical opinions, the RFC determination is expressly reserved to the Commissioner. *Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004); 20 C.F.R.§§ 404.1527(e)(2), 404.1546, 416.927, and 416.945(a)(1).

Plaintiff asserts the ALJ "did not consider the limitations the condition[s] impose[] when determining her residual functional capacity." (Doc. 13, at 5). However, just because the ALJ did not *adopt* these limitations, does not mean he not *consider* them. The ALJ did in fact consider Plaintiff's eczema and left shoulder pain throughout his analysis and specifically in the RFC section of his opinion, but determined the limitations caused by those impairments were not as severe as Plaintiff suggested. (Tr. 16-18, 20-26). The ALJ acknowledged Dr. Reddy's severe eczema diagnosis (Tr. 17) (citing Tr. 258). Importantly, however, it is not a diagnosis that creates

disability but rather "the functional limitations imposed by a condition". *Hill v. Comm'r of Soc. Sec.,* 560 F. App'x 547, 551 (6th Cir. 2014). The ALJ noted that in February 2012 Plaintiff's skin appeared normal. (Tr. 17) (citing Tr. 237). He noted in November 2012 she had no cyanosis, edema or musculoskeletal atrophy; her range of motion in her wrists, hands, and fingers was intact; and her grasp, manipulation, pinch, and fine coordination abilities were normal. (Tr. 17) (citing Tr. 245, 251-52). The ALJ added Plaintiff was prescribed Fluconazole for her hands in December 2012 (Tr. 17) (citing Tr. 266), but she specifically denied problems with her hands in a September 25, 2013 questionnaire (Tr. 17) (citing Tr. 211).

With regard to her left shoulder pain, the ALJ found she had a severe impairment of mild osteoarthritis of the left shoulder. (Tr. 16). In assessing Plaintiff's RFC the ALJ noted the consultative examiner determined she could lift and/or carry ten to fifteen pounds frequently and fifteen to twenty-five pounds occasionally (Tr. 20 citing 245-51). The ALJ noted the opinion was "generally consistent with the totality of medical evidence illustrating the claimant's physical functional abilities and reported activities of daily living the undersigned finds credible." (Tr. 20

The objective medical evidence in this case is limited and, even so, reveals mild impairments. It is ultimately up the ALJ to determine Plaintiff's residual functional capacity; here, he determined objective evidence did not support and was inconsistent with Plaintiff's subjective complaints. (Tr. 22). The Court discusses Plaintiff's challenge to this credibility determination below.

The ALJ's RFC determination is supported by substantial evidence and, thus, proper. The ALJ gave significant weight to the uncontested opinion of state agency consultant Dr. Rajkotwala, who determined Plaintiff could perform light work. (Tr. 20) (citing Tr. 245-51). *See* 20 C.F.R. § 404.1527(e)(2)(i); *Vorholt v. Comm'r of Soc. Sec.,* 409 F. App'x 883, 887 (6th Cir.

2011) (holding an ALJ was justified in relying on the opinion of the state agency doctor). The ALJ stated the opinion was consistent with the medical evidence showing right knee mild osteoarthritic changes, mild lower lumbar facet arthropathy, and decreased range of motion in the lumbar spine and left shoulder. (Tr. 20) (citing Tr. 221-44, 252-54, 255-70). He noted the record showed no evidence of persistent neurological deficits or nerve root compromise. (Tr. 23). The ALJ mentioned Plaintiff had not consistently demonstrated signs of chronic severe pain and clinical examinations did not identify signs of inflammatory disease. *Id.* (citing Tr. 223-41, 250-51, 257-70). Plaintiff was in no apparent distress during a February 2012 physical examination. (Tr. 24) (citing Tr. 237).

Plaintiff made various complaints during a consultative examination in November 2012, but she ambulated without aid, and had intact cranial nerves, intact sensory stem to fine touch and pin prick; and normal motor system strength in both upper and lower extremities. *Id.* (citing Tr. 245-51). She had a slightly decreased range of motion in her spine, but there was no evidence of musculoskeletal atrophy, spasm, spasticity, clonus, or primitive reflexes. *Id.* She had some decreased range of motion in her left shoulder, but there was no atrophy or spasm. *Id.* Additionally, examination of her right leg and knee was unremarkable and there was no evidence of any acute inflammation in any of Plaintiff's joints or bones. *Id.*

Also, the ALJ pointed to x-rays which support his RFC determination. *Id.* X-rays of Plaintiff's right knee revealed mild bicompartment osteoarthritic changes, but no evidence of acute osseous findings. *Id.* (citing Tr. 252). X-rays of Plaintiff's lumbar spine showed mild lower lumbar facet arthropathy of the L5-S1 level, but no evidence of acute lumbar spine findings or major degenerative changes. *Id.* (citing Tr. 253). X-rays of Plaintiff's left shoulder revealed mild degenerative joint disease without acute bony abnormality. *Id.* (citing Tr. 270). Taking all of

these findings as a whole, the undersigned finds the ALJ's RFC determination supported by substantial evidence.

Step Four - Ability to Perform Past Relevant Work

Plaintiff argues the ALJ erred in his determination Plaintiff her could perform past work as cashier and fast food worker because her "eczema limits her to, at most, occasional bilateral fine manipulation." (Doc. 13, at 6). However, as noted above, the Court finds the ALJ's RFC determination—that Plaintiff can perform all functions of light work except occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and never climb ladders, ropes, or scaffolds—supported by substantial evidence.

Finally, because the Court finds the ALJ's RFC determination (above) and credibility determination (below) supported by substantial evidence, Plaintiff's brief assertion she should be found disabled pursuant to Medical-Vocation Guideline 202.04 is not well-taken. *See Cole*, 820 F.2d 768, 771 (6th Cir. 1987) (stating an ALJ may only use the grid if it is determined that a plaintiff cannot perform his or her past relevant work). The ALJ did not err in his RFC determination or Step Four determination and both are supported by substantial evidence.

Credibility Assessment

Plaintiff challenges the ALJ's determination that her allegations were not entirely credible. In some instances, pain alone may support a claim of disability. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). Pain symptoms, however, can be difficult to quantify, so the determination often turns to Plaintiff's credibility. *Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004); *See also* SSR 82-58, 1982 WL 31378, *1 ("Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms are difficult to prove, disprove, or quantify."). An ALJ may take Plaintiff's credibility into

14

account when making a determination regarding the severity of her pain complaints. *Hickey-Haynes*, 116 F. App'x at 726-27. In order to make a determination regarding a claimant's credibility an ALJ considers the following factors:

> (i) [A claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [Plaintiff's] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use or ha[s] used to relieve [a claimant's] pain or other symptoms; and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. Here, the ALJ reviewed Plaintiff's subjective complaints and determined they were not support by or consistent with the objective medical evidence. (Tr. 22-26).

The ALJ's credibility determination is afforded great weight by the reviewing court. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). In fact, this Court's review is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. Additionally, the Court may not "try the case de novo, nor resolve conflicts in evidence . . . ." *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Here, the ALJ thoroughly discussed and evaluated the entire record and noted the inconsistences between Plaintiff's subjective complaints and objective medical evidence, suggesting her impairments are not as limiting as she alleges. (Tr. 22-26).

The ALJ appropriately considered Plaintiff's daily activities in his credibility assessment. *See Walters*, 127 F.3d at 532 ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."). He determined her ability to partially perform household chores, drive, shop for groceries, play computer games, and care for her mother all indicated her limitations were not as severe as she alleged. (Tr. 18, 24) (citing Tr. 47, 48, 51, 52, 201-12).

Additionally, when treatment records are limited an ALJ may consider an individual's ability to afford treatment and whether she has access to free or low-cost medical services. Social Security Ruling 16-3p, 2016 WL 1119029. Here, the ALJ appropriately considered this factor and reasonably concluded Plaintiff's failure to seek out any type of treatment indicates her symptoms were not as severe as she alleged. (Tr. 17-18, 25); *see also McCullouch v. Astrue*, 2013 WL 608412, at *14, report and recommendation adopted by 2013 WL 941384 (S.D. Ohio). Indeed at the hearing, Plaintiff did not claim she lacked access to such, but rather she was unaware of any free of low-cost services. (Tr. 51). Additionally, while Plaintiff alleges a financial inability to seek treatment after June 2013, the ALJ discussed inconsistencies in her subjective complaints and objective medical evidence prior to this time. (Tr. 22-26). The ALJ did not err in his credibility assessment and the undersigned finds it supported by substantial evidence.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the

16

undersigned finds the ALJ's decision supported by substantial evidence, and recommends the Court affirm the Commissioner's decision denying benefits.


 s/James R. Knepp, II
United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).